(No. 86-CC-3406

SHIRLEY CRIDER, Administrator of the Estate of JAMES CRIDER, Deceased *et al.*, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1994.*

BRYAN J. O'CONNOR III, for Claimant.

ROLAND W. BURRIS, Attorney General (GREGORY ABBOTT, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MITCHELL, J.

On January 11, 1985, 27 year-old James Crider's (James) decade-long battle first with drugs and alcohol and ultimately with severe schizophrenia ended when he escaped from the Elgin Mental Health Center (EMHC)

and apparently froze to death in a farm field less than one-half mile from the facility.

This cause comes before the Court on the claim of James' mother, Shirley Crider, for damages under the Survival Act, damages under the Wrongful Death Act, and for funeral and burial expenses, including claims by James Crider's parents and siblings for loss of consortium and society.

A default judgment was entered in Claimant's favor on the issue of liability. Therefore, the only question for this Court is the amount of the damages.

Detailed testimony was heard from each of the members of the family concerning their relationship with James, both as he was growing up and after the onset of his mental illness. Having heard all testimony and viewed the detailed Claimant's exhibits, it is clear that James grew up in a supportive environment and that even if James' father's work caused him to sacrifice some family time in order to support his family of eight, there were obviously many good times shared by James with his family before the serious problems of chemical dependency and mental illness set in.

The Crider family was worn out from riding the roller coaster of emotions caused by having a mentally-ill family member. (James was hospitalized for 1,174 days but that means he must have been home for nearly 2,000 days between hospitalizations during that last decade of his life.) They would be less than human if, upon learning of James' death, they did not feel at least to a small degree a sense of relief both that James' battle with the demons within him was finally over, and that their own conflicting emotions over what James had been and what he had become could be put aside and grieving over the loss of

the former begun. Further, it was impossible for the Crider family to detect when James' behavior caused by chemical dependency changed into actual mental illness from which no amount of detoxification could save him.

Because the sole question before us is damages, we must limit our holding to that area.

We find Claimant's comparison to *Copland v. State* (1989), 41 Ill. Ct. Cl. 125, inappropriate as regards the amount of monetary damages.

In *Copland*, the decedent was a hopelessly retarded but very loving boy whose life revolved around his relationship with his family, who exhibited an almost incredible outpouring of affection for this boy who would remain a perpetual infant, but was at least capable of returning a child's love.

By contrast, James Crider was no longer able to profit from the love or affection of his family as his illness became more pronounced and his withdrawal from the real world more complete.

Family reaction in the two cases is likewise dissimilar. Scott Copland's family had no reason to expect Scott's death; James Crider's family knew of his self-destructive behavior. James Crider's family understood that their efforts were largely futile, and for the most part, with the exception of his mother, visited him only ancillary to visits to the home when James happened to be there. It was a logical reaction to a painful situation which they felt helpless to reverse. Nonetheless, the comparison to *Copland* is inappropriate.

James Crider, although obviously not in his right mind, walked into subfreezing temperatures wearing only a thin nightgown. We can only hope that he was not aware

of the suffering his body endured in freezing to death. A large portion of the loss occurred before James' death because of his mental illness, for which the State of Illinois is not liable, and the amount awarded reflects that fact. For the pain and suffering decedent suffered prior to death, we award to the estate of James Crider the sum of $50,000, including expenses of funeral and burial. To Shirley Crider, who remained a regular visitor to James and, even in the face of his threat upon her life, suffered the pain of watching him deteriorate, we award the sum of $50,000 for loss of society. To his father, George Crider, we award the sum of $20,000 for loss of society. To his sister, Linda Keasler, we award the sum of $10,000 for loss of society. To his brother, Michael Crider, we award the sum of $10,000 for loss of society. To his sister, Gail Rasmussen, we award the sum of $10,000 for loss of society.